UNITED STATES COURT OF APPEALS
TENTH CIRCUIT

**Filed 10/11/96**

RICHARD L. GILBERT,

      Plaintiff-Appellant,

v.

STORAGE TECHNOLOGY
CORPORATION, a Delaware
corporation,

      Defendant-Appellee.

No. 95-1060
(D.C. No. 93-M-1800)
(D. Colo.)

## ORDER AND JUDGMENT[*]

Before **SEYMOUR**, Chief Judge, **HOLLOWAY** and **BRISCOE**, Circuit Judges.

Plaintiff-appellant Richard L. Gilbert appeals from the district court's final judgment entered against him in this employment discrimination case. The district court had jurisdiction under 28 U.S.C. § 1331 because plaintiff asserted claims based on two federal statutes. We have appellate jurisdiction under 28 U.S.C. § 1291.

Plaintiff filed this suit against defendant Storage Technology alleging he was discharged from his employment in violation of the Americans with Disabilities Act of 1990

---

*This order and judgment is not binding precedent except under the doctrines of the law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(ADA), 42 U.S.C. §§ 12101-12213, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621- 634.  The case went to jury trial.  At the conclusion of the plaintiff's case, the district court granted judgment as a matter of law for the defendant on the ADA claim under Fed. R. Civ P. 50(a), finding that plaintiff had failed to show that he was a handicapped individual within the meaning of the ADA.  The jury returned a verdict for the defendant on the ADEA claim.

Plaintiff appeals, contending that the district judge erred in granting judgment as a matter of law on the ADA claim, having erroneously found that he failed to show he was a handicapped individual under the ADA.  He also claims error in the trial judge's erroneous denial of a challenge for cause to a prospective juror which resulted in the deprivation of his statutory right to exercise of his peremptory challenges and in the district court's abuse of discretion in excluding several exhibits offered by plaintiff at trial.  We find no error and affirm.

I

Before setting out the facts necessary to discussion of the issues on appeal, we note that we must apply a different standard in reviewing the facts in our analysis of the ADA issues from that which we must employ in our consideration of the ADEA issues.  In reviewing the grant of defendant's motion for judgment as a matter of law on the ADA claim, we must view the facts in the light most favorable to plaintiff, as we further explain *infra*.  In reviewing the judgment in favor of defendant on the ADEA claim based on the

2

jury's verdict, we of course view the facts in the light most favorable to defendant. As a practical matter, these disparate standards of review cause no difficulty under the circumstances, as only relatively few facts are in dispute, and we find that no material fact relevant to the ADA claim is genuinely disputed.

Plaintiff has a bachelor's degree in mechanical engineering and had worked for IBM for 31 years as an engineer and manager. He accepted employment as a managing engineer with defendant in Colorado in July 1991. He was 53 at that time. He informed defendant prior to accepting the job that he had suffered from asthma all his life. His asthma has been diagnosed as "moderately severe," indicating that he must take medication occasionally but has no chronic pulmonary impairments and his condition is under control. II Tr. at 322-23.[1]

Upon beginning his employment with defendant, plaintiff was assigned to defendant's headquarters in Louisville, Colorado. Shortly afterward, he was transferred to the company's facility in Longmont, Colorado. Plaintiff testified that his asthma began causing him severe problems after he began working at Longmont. He was frequently absent as a result. Plaintiff's supervisor, Mr. Pyatt, considered his absenteeism to be excessive and first voiced concern about the number of absences in either December 1991 or January 1992. II Tr. at 268. Plaintiff's period of most frequent absences was during the first half of 1992. A

---

[1]Our citations to the record will be, unless otherwise noted, to the three volumes of the trial transcript to which plaintiff-appellant's brief refers and which have been filed with this court as supplemental volumes of the record on appeal. They were not originally filed as required by 10th Cir. R. 10.1.1. We ordered that the record be supplemented with copies of the transcripts on file with the district court pursuant to Fed. R. App. P. 10(e).

performance evaluation was completed in June 1992, after plaintiff had been with defendant about eleven months. Plaintiff submitted his views to Mr. Pyatt as a part of the evaluation, and plaintiff's own input acknowledged that his attendance was a weakness. *Id.* at 273-74. The evaluation completed by Pyatt reflected substantial concern with plaintiff's absences. *Id.* at 274-78.

Although plaintiff's attendance began to improve somewhat, Pyatt remained frustrated with the situation. On March 1, 1993, Pyatt and Jimmy Hartsfield, a human resources manager with defendant, informed plaintiff that he would no longer continue in his position and that he had two options: He could either resign, in which case he would receive a "severance package" and would also have the right to withdraw his resignation within 30 days, or he could accept a new position which would not have managerial responsibilities and in which he would be subject to strict guidelines of a performance improvement plan (which apparently meant that his attendance and performance would be monitored more closely than usual, with his continued employment being dependent on satisfactory reviews). I Tr. at 230-31, 238.

Plaintiff accepted the first alternative but changed his mind. Near the end of the thirty day revocation period he announced his desire to withdraw his resignation and accept the second alternative. He was told that since his acceptance of the resignation option the company had undergone a consolidation and reduction in force and that there was no opening for him. *Id.* at 240. Plaintiff's former job was given to a younger man. II Tr. at 261; III Tr.

4

at 503. Plaintiff was told that he could remain on the payroll for another thirty days, during which he would have an office and could search for other openings within the company to which he could request a transfer, or could begin looking for work elsewhere. Plaintiff's efforts during this period were unsuccessful, and his employment ended on April 30, 1993. After filing a complaint with the Equal Employment Opportunity Commission and receiving a notice of his right to sue, plaintiff commenced this action.

Plaintiff attributes his attendance problems to exacerbation of his asthma resulting from the environment at the Longmont facility. Defendant contends that during his employment, plaintiff never suggested that he might be able to avoid asthma attacks if defendant provided some kind of accommodation, nor did he explain that his absenteeism was a result of the combination of his asthma and the air quality in the facility. Plaintiff contends that he discussed his problem and the fact that several other workers in the building were having allergy problems with the company's human resources manager, who referred him to the environmental and ergonomics department, which assigned a temporary employee to make inquiry into the complaints. Plaintiff also contends that he signed a medical release at Pyatt's request so that defendant could assess his condition, but defendant never attempted to obtain his records, nor did defendant take any meaningful steps to determine the cause of the problems plaintiff and others were experiencing.

## II

We will first address the issue of whether the district court erred in concluding that

5

plaintiff had failed to show that he was a "handicapped individual" as that term is used in the ADA and thus erred in granting judgment as a matter of law for defendant on plaintiff's ADA claim. We review *de novo* a grant of judgment as a matter of law, viewing all evidence in the light most favorable to the non-movant, and drawing all reasonable inferences in his favor. Honce v. Vigil, 1 F.3d 1085, 1088 (10th Cir. 1993); Martin v. Unit Rig & Equipment Co., 715 F.2d 1434, 1438 (10th Cir. 1983).

The district court relied on the reasoning of Heilweil v. Mt. Sinai Hospital, 32 F.3d 718 (2d Cir. 1994), cert. denied, 115 S.Ct. 1095 (1995), in ruling that plaintiff could not sustain his claim under the ADA as a matter of law, agreeing with defendant's argument that plaintiff had failed to show that he was a "qualified person with a disability" within the meaning of the ADA. The relevant portion of the definition of a person with a disability has two parts: that the plaintiff has a physical impairment and that the impairment substantially limits one or more of his major life activities. 42 U.S.C. § 12102(2)(A). Plaintiff contends that he is substantially limited in the major life activity of working. The ADA does not define the term "substantially limited." Therefore we turn to the regulations promulgated by the Equal Employment Opportunity Commission. The regulations provide that:

> With respect to the major life activity of *working* --
>
> (I) The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

6

29 C.F.R. Pt. 1630.2(j)(3) (emphasis added).

Plaintiff's evidence showed, at most, that something in the environment in the Longmont facility caused him to suffer asthma attacks and made it impossible for him to continue working there. On cross-examination, plaintiff testified that his asthma had never before interfered to such an extent with his ability to work. While employed at IBM, he had worked in several states, with some localities causing him more problems than others, but none creating a serious interference with his ability to work. As the years passed, he benefitted from treatment by doctors with more training in treating asthmatics, and so, until going to work for defendant, he had been finding his asthma less of a problem than ever before. Not only was he able to continue working as before, but he was able to enjoy more vigorous recreational activities than before.

Thus, we agree with the district court's conclusion that plaintiff's evidence did not show that he was disabled with respect to a major life activity. As we held in Bolton v. Scrivner Inc., 36 F.3d 939, 942 (10th Cir. 1994), cert. denied, 115 S.Ct. 1104 (1995), it is insufficient that plaintiff may have had a substantial limitation on his ability to perform this particular job. It is necessary to consider the "number and type of jobs from which the impaired individual is disqualified . . . ." Welsh v. City of Tulsa, 977 F.2d 1415, 1419 (10th Cir. 1992).[2] Plaintiff clearly did not show a significant restriction in the ability to perform

---

[2]Welsh v. City of Tulsa was decided under the Rehabilitation Act, not the ADA, but the same definitions apply under the two statutes. Bolton, 36 F.3d at 942-43.

"either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." Bolton, (quoting 29 C.F.R. § 1630.2(j)(3)(I)). Indeed, plaintiff made no attempt whatsoever to establish that his asthma interfered with his ability to work other than his experience at defendant's Longmont facility. Plaintiff's asthma has not affected his ability to perform any of his previous jobs. Inability to perform a particular job for a particular employer is not sufficient to establish a handicap; the impairment must substantially limit employment generally. Bolton, 36 F.3d at 944 (affirming grant of summary judgment).

### III

We next consider plaintiff's contention that he was deprived of his statutory right to peremptory challenges when the district judge erroneously overruled his challenge for cause to prospective juror Strunk. We review the denial of a challenge for cause under the abuse of discretion standard. Getter v. Wal-Mart Stores, Inc., 66 F.3d 1119, 1122 (10th Cir. 1995), cert. denied, 116 S.Ct. 1017 (1996).

Mr. Strunk revealed during *voir dire* examination that he owned stock in defendant Storage Technology. Tr. at 63. Upon determining that Mr. Strunk primarily deferred to his wife, who was a stock broker, in investment decisions in the stock market, and that he did not know the extent of their ownership in Storage Technology, the trial judge overruled plaintiff's challenge for cause. Plaintiff's counsel then used a peremptory challenge to remove Mr. Strunk.

We will assume, without deciding, that the denial of plaintiff's challenge was an abuse of discretion. See Getter, 66 F.3d at 1122 (financial interest resulting from wife's employment and prospective juror's stock ownership is "precisely the type of relationship that requires the district court to presume bias and dismiss the prospective juror for cause"). However, plaintiff is not entitled to relief on appeal in any event because he has not shown, nor even contended, that the jury which was actually impaneled was not impartial. Getter, 66 F.3d at 1122-23. Cf. Ross v. Oklahoma, 487 U.S. 81, 86-88, 91 (1987). Thus, there is no merit to plaintiff's argument on this issue.

**IV**

Finally, we turn to plaintiff's contention that the district court abused its discretion in refusing to admit certain exhibits which he offered in evidence at trial.[3] First, plaintiff contends that the district judge erroneously refused to admit defendant's affirmative action plans setting forth its equal opportunity policies. Plaintiff argues generally that these exhibits were admissible to show that the defendant and its managers were aware of, but failed to live up to, their obligations under the ADA and the ADEA. The record reveals that defendant's

---

[3]We note that one of the three evidentiary issues raised by plaintiff is moot because of our holding on the ADA issue. Plaintiff concedes that the exhibit which is the subject of this contention related only to his ADA claim. The exhibit contained information relevant to defendant's financial condition, which plaintiff contends was relevant because he sought punitive damages in his ADA claim. The trial judge apparently ruled the exhibit inadmissible because the witness could not identify the document. In any event, we need not reach this issue because we have held that the district judge properly granted judgment as a matter of law for defendant on the ADA claim.

witnesses never professed ignorance of the statutes and their requirements, not that ignorance would have been a defense in any event. Consequently, we do not perceive that these exhibits would, on this justification, have been relevant to any contested issue in the trial. Fed. R. Evid. 401, 402.

Plaintiff's more specific argument for admission of these exhibits is focused entirely on the statements made by the company with regard to its intent to accommodate any "challenged individual." Plaintiff asserts that the company went beyond the "lofty and altruistic general pronouncements" of most affirmative action plans to make "bold statements" indicating a very positive intention to make accommodations for employees' physical limitations. Clearly, this contention bears only on the insufficient ADA claim. Consequently, the error, if any, in denying admission of these exhibits could not have been prejudicial.

Plaintiff also contends that the district court erred in refusing to admit three other exhibits, identified as plaintiff's exhibits 48, 49, and 50, which plaintiff describes as "legal publications outlining the coverage of the ADA and the employer's legal obligations under that statute." These were copies of a newsletter, "Fair Employment Practices," which is published by the Bureau of National Affairs. Defendant's human resources department apparently circulated this publication to ensure that those employees who were dealing with personnel issues were apprised of recent developments in employment law, including cases arising under the ADA. Again, defendant did not deny that it was aware of its obligations

10

under the law. Accordingly, these exhibits were not relevant to any of the factual disputes to be decided by the jury, and their exclusion could not have been an abuse of discretion. Moreover, plaintiff does not contend that these exhibits were relevant to the ADEA claim. Therefore, even if there were error in the trial court's rulings, plaintiff cannot show that he was prejudiced, and any error would clearly have been harmless.

**V**

We conclude that the judgment of the district court must be, and is hereby,

**AFFIRMED.**

> Entered for the Court
>
> William J. Holloway, Jr.
> Circuit Judge